FILED ENTERED HONORABLE MARSHA J. PECHMAN
LODGED RECEIVED

MAY 10 2001 MR

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARY GOULD,<br><br>Plaintiff,<br>vs.<br><br>THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, formerly known as BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware corporation,<br><br>Defendant. | CAUSE NO. C00-1435P<br><br>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY<br><br>**NOTED FOR HEARING: June 8, 2001**<br><br>**ORAL ARGUMENT REQUESTED** |

CV 00-01435 #00000013

## I. INTRODUCTION

On February 24, 1999, the plaintiff, Cary Gould, was employed as a switchman for defendant Burlington Northern and Santa Fe Railway Company (hereinafter, "Burlington Northern"). While working in a privately owned industrial railroad track area serviced by Burlington Northern, Mr. Gould's foot slipped in an unsafe, muddy area adjacent to the track. His right knee hyper-

ORIGINAL



KARGIANIS WATKINS, L.L.P., P.S.
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

extended and the plaintiff suffered a career ending knee injury. In the months and weeks prior to his injury, the plaintiff had informed his employer, both orally and in writing, of the dangerous slippery conditions that ultimately caused his injury.

Although aware of the unsafe work environment extant within the industry yard, defendant Burlington Northern failed to properly correct the hazard and thereby failed to provide Mr. Gould with a safe place to work. The plaintiff now seeks Summary Judgment on all issues of liability.

## II. RELIEF REQUESTED

Cary Gould hereby moves the court for an Order on Summary Judgment, finding as a matter of law that, 1.) Defendant BNSF violated its non-delegable duty pursuant to the Federal Employees Liability Act ("FELA"), 45 U.S.C. 51 et seq., to provide the plaintiff with a safe place to work, 2.) Defendant's negligence was a proximate cause of Mr. Gould's injuries, and 3.) Mr. Gould is not comparatively at fault for the injuries he sustained.

## III. FACTS

Mr. Gould suffered an on the job injury on February 24, 1999, while working as a switchman for defendant Burlington Northern. See Exhibit No. 1



KARGIANIS WATKINS, L L P , P S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

(Personal Injury Report) to Declaration of Michael T. Watkins. Mr. Gould was assigned by his employer to pick up and drop off railcars at an industrial track owned by Burlington Northern's customer, CSI. See Exhibit No. 2 (Excerpts of Cary Gould Deposition) to Declaration of Michael T. Watkins. The plaintiff hyper-extended his right knee when his foot slipped in mud while he was, " . . . stepping over rail (at CSI trk # 1121). . ." See Exhibit No. 1 (Personal Injury Report) to Declaration of Michael T. Watkins.

In the months and weeks prior to his accident, Mr. Gould informed his employer that the CSI industrial track was unsafe because of slippery footing conditions and needed maintenance. See Exhibit No. 2 (Excerpts from Cary Gould Deposition) to Declaration of Michael T. Watkins. He notified Rick Johnson, his employer's Safety Chairman, both orally and in writing, that the CSI industry track and the surrounding area was slippery and dangerous. See Exhibit No. 3 (Excerpts from Rick Johnson Deposition) to Declaration of Michael T. Watkins. Rick Johnson received Safety Condition Reports, both orally and in writing, from various sources at the Burlington Northern regarding unsafe conditions in the work place. See Exhibit No. 3 (Excerpts from Rick Johnson Deposition) to Declaration of Michael T. Watkins. It was his job to convey the information contained in those reports to the appropriate Burlington Northern department so that the unsafe conditions could be corrected in a timely fashion. See Exhibit No. 3 (Excerpts from Rick Johnson Deposition) to



KARGIANIS WATKINS, L L P , P S.
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

Declaration of Michael T. Watkins. Mr. Johnson testified in deposition that he had, in fact, received notification from the plaintiff prior to the subject accident that the CSI industry track was slippery and dangerous:

> Q. (By Mr. Watkins) Do you have an independent recollection, as you sit here today, of receiving any communications from any source regarding slippery conditions on the industry tracks between CSI and Pacific Coast?
> A. (By Mr. Johnson) Yes.
>
> . . .
>
> Q. Do you remember who - - well, let me back up just a little bit. When I say did you receive information about slippery conditions, what I'm talking about are safety issues that the area on the - - on and around the track which was slippery and posed a hazard to workmen. Is that what you understand me to - -
> A. Yes.
> Q. And who were the person or persons who orally told you about those slippery conditions?
> A. Cary Gould.
>
> . . .
>
> Q. And do you know the time frame that you may have received these oral notifications of the slippery conditions in the industry are between CSI and Pacific Coast?
> A. It seems to me that they were in the latter part of ninety -- it was in the winter of ninety -- '98. Like in -- like in the October or September months, or something like that.

See Exhibit No. 3 (Excerpts from Rick Johnson Deposition) to Declaration of Michael T. Watkins.



KARGIANIS WATKINS, L.L P., P S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

Additionally, Mr. Gould filled out written Safety Condition Reports, prior to the subject accident, and submitted them to his Trainmaster (Mr. Hunter) and Rick Johnson in an attempt to get the unsafe conditions corrected. See Exhibit No. 4 (Safety Condition Reports) to Declaration of Michael T. Watkins.

Instead of repairing the dangerous condition through the relatively simple process of spreading small gauge gravel ("fines") in the slippery work area, Burlington Northern made requests to CSI, its industry customer, to make the needed repairs. Rick Johnson, the Safety Chairman, explained in a letter to the plaintiff, just eight days before the subject accident, why the unsafe condition was left uncorrected:

> Cary:
> Would you please let me know what number to call on about the fines that needed to be spread at CSI. **As you know Brian Hipol would not fill these tracks with fines because there (sic) not our tracks.**
> Please let me know, I'll be happy to call them on this safety matter.
>
> Sincerely
> Rick

[Emphasis added.]

See Exhibit No. 5 (Rick Johnson Letter dated February 16, 1999) to Declaration of Michael T. Watkins.

Burlington Northern's FRCP 30 (b)(6) speaking agent, Brian Hipol, confirmed that it was Burlington Northern's policy to rely on its customers to make needed repairs, with respect to unsafe conditions located on the customers' railroad tracks:

KARGIANIS WATKINS, L.L.P., P.S.
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

> Q. And so as speaking agent for Burlington Northern and Santa Fe, it is a correct statement, is it not, that you would typically not perform work on unsafe conditions on the industry trackage?
>
> A. (By Mr. Hipol) That would be up to the industry's – it's industry's responsibility. If they hired us to come in and do that, then we would, yes.
>
> See Exhibit No. 6 (Excerpts from Brian Hipol Deposition) to Declaration of Michael T. Watkins.

Unfortunately, neither Burlington Northern nor its customer, CSI, made the needed repairs. *As a direct and proximate result of the defendant's failure* to correct the slippery conditions, the plaintiff suffered the subject disabling knee injury. See Exhibit No. 7 (Supervisor's Report) to Declaration of Michael T. Watkins.

It is clear that because of its ***non-delegable*** duty to provide Mr. Gould with a safe place to work, defendant Burlington Northern was required to either repair the unsafe condition or refuse to allow its workmen into the CSI yard until repairs were made. It did neither.

It is also uncontroverted that at the time of the accident, Mr. Gould was performing his assigned tasks in the location designated by his defendant employer and was doing so in a reasonable and prudent fashion. He violated no work rule. The testimony of Burlington Northern Trainmaster, David Helbing, supports this conclusion:

> Q. (By Mr. Waechter) Okay. Is one of the responsibilities of a train master to cite a worker for



KARGIANIS WATKINS, L L P , P S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

rules violations if indeed that train master believes that a rule has been violated?

A (By Mr. Helbing) If an employee violates a rule, yes sir, it is.

Q. And did you cite Mr. Gould for any rules violations on February 24, 1999, assuming that's the date of this accident?

A. Not to my knowledge, I didn't cite him.

Q. Okay. And, as you sit here today, have you personally ever cited Mr. Gould with a rules violation in connection with this particular slip and fall?

A. With this particular slip and fall, no.

See Exhibit No. 8 (Excerpts from David Helbing Deposition) to Declaration of Michael T. Watkins.

The plaintiff's supervisor, Mr. Hunter, also recognized the fact that Mr. Gould was not at fault for this accident. In his report, Mr. Hunter stated the following:

**Contributing Factors (acts & conditions):**
**A.) Acts"** What acts, omissions, or errors in judgment contributed to the accident?

"Employee new (sic) area was muddy and being careful."

See Exhibit No. 7 (Supervisor's Report) to Declaration of Michael T. Watkins.

Although the defendant has alleged in its boilerplate answer that the plaintiff was comparatively at fault for the accident, there simply is no evidence from any source to support that allegation.

## IV. LEGAL ARGUMENT

KARGIANIS WATKINS, L.L.P, P.S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

Summary judgment is appropriate " . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,248, 106 S.Ct. 2505, 2510 (1986). A factual dispute is "material" if it might affect the outcome of the case. Id.

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). After the moving party has met its initial burden, " . . . the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment is properly entered against a party who fails to make the required showing. Fed.R.Civ.P 56 (e).

**A. Standard of Care Imposed by the Federal Employers' Liability Act ("FELA")**

The Federal Employers' Liability Act, 45 U.S.C. § 51, creates a right of action in favor of a railroad employee for injuries resulting from his employer's negligence. Railroad workers have only FELA remedies for injuries on the job.

KARGIANIS WATKINS, L.L P , P.S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

There is no analogous worker's compensation program for railroad employees. The FELA was passed to protect railroad workers. The term "negligence", as used in the Act, is to be construed liberally. Slaughter v. Atlantic C.L.R. Co., 112 U.S. app D.C. 327, 302 F.2d 912, 8 A.L.R. 3d cert den 371 U.S. 827, 9 L.ED. 2d 65, 83 S.Ct. 48 (1962). The carrier is required to take *all reasonable precautions* commensurate with known and foreseeable dangers. Harrison v. Missouri P.R. Co., 372 U.S. 248, 9 L.Ed. 2d 711, 83 S. Ct. 690 (1963). In this case, the defendant could have easily eliminated the slip hazard that injured the plaintiff by using conventional fines and like traction material to make the area safe. Defendant Burlington Northern failed to address the slip hazard in any reasonable way and the plaintiff was injured.

Further, if the employer could foresee that the unsafe condition might result in injury of some kind to an employee, it is not necessary that the particular consequence or type of injury have been foreseen. Virginian R. Co. v. Viars (CA 4 W. Va) 193 F.2d 547 (1952).

**B. The Act Requires A "Causal Relationship" Rather Than Proximate Cause**

The Act expressly refers to a railroad's liability for injuries or death "resulting in whole or part" from its breach of duty. 45 U.S.C. § 51; Coray v. Southern Pac. Co., 335 U.S. 520, 524, 93 L.Ed. 208, 69 S. Ct. 275 (1949). This provision of the Act has been interpreted by the courts to mean that the employer may be held liable for death or injury in the production of which its



KARGIANIS WATKINS, L.L.P., P.S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

failure to exercise due care played any part, however slight. Dennis v. Denver & R.G. W. R. Co., 375 U.S. 208, 11 L.Ed. 2d 256, 84 S. Ct. 291 (1963); Gallick v. Baltimore & O. R. Co., 372 U.S. 108, 9 L.Ed. 2d 618 (1963).

This "relaxed standard of causation," as expressly stated in the Act, provides that the railroad ". . .shall be liable in damages to any person suffering injury while he is employed by such a carrier in such commerce." 45 U.S.C. § 51. The test of causation, in accordance with the Act, that ". . .employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 129 L.Ed.2d 427, 440, 114 S.Ct. 2396 (1994). The Ninth Circuit Court of Appeals, in Taylor v. Burlington Northern Co., 787 F.2d 1309 (9th Cir. 1986) quoted the seminal case of Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500 (1957) in stating the law as follows:

> Under the FELA, an employee is entitled to recover damages if the employer's negligence plays any part in producing the injury, no matter how slight.

Taylor, supra, at 1313.

Here, the "causal relationship" between the defendant's failure to provide the plaintiff with a safe work place and the slipping injury is obvious. As can be seen from the deposition of the defendant's speaking agent, Burlington Northern was waiting for its customers to inspect, maintain and repair defects related to the industry tracks. However, the defendant is not allowed by the



KARGIANIS WATKINS, L.L P , P S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

FELA to wait for others to make the workplace safe for its employees. The FELA imposes a ***non-delegable*** duty upon Burlington Northern to provide its employees with a safe place to work, no matter where the work is performed. It cannot be heard to say after an injury to its employee that it was reasonable to rely on its customers to make the needed repairs to protect Burlington Northern's employees' work place.

**C. Burlington Northern Breached its Duty of Care to Its Employee**

**1. Failure to Provide A Safe Workplace.**

Federal law imposes a continuing, ***non-delegable*** duty to provide the employee with a safe place to work. Kimbler v. Pittsburgh & L.E.R. Co., 331 F.2d 383 (1964); Lehigh Valley R. Co. v. Scanion, 259 F. 137 (1919).

The continuing and ***non-delegable*** duty to use reasonable care to furnish a safe place to work is broadly defined. The duty extends to any form of defect that makes a place to work unsafe. Examples of some of these cases include the following: Webb v. Illinois Central R. Co., 352 U.S. 512 (1957) (a clinker in the road bed); Harris v. Pennsylvania R. Co., 361 U.S. 15 (1959) (oil on a cross tie); Gibson v. Thompson, 355 U.S. 18 (1957) (loose and unpacked gravel in a railroad yard); Isgett v. Seaboard Coast Line R. Co., 322 F. Supp. 1127 (1971) (employee standing in pool of water).

Even an adherence to industry safety standards does not negate liability if, in the exercise of due care, the employer should have known that such



KARGIANIS WATKINS, L L P , P S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

standards were inadequate. Erie v. Thompson, 337 U.S. 163, 93 L.Ed. 1282, 69 S. Ct. 1018, 11 A.L.R. 2d 252 (1949).

**2. Failure to Implement Safety Rules and Regulations**

A carrier is negligent in failing to promulgate and enforce appropriate rules and regulations. Pritt v. West V. N.R.R., supra; Central V. R.R. v. White, 238 U.S. 507, 59 L.Ed. 1433, 35 S. Ct. 865 (1948). With respect to the instant accident, the defendant failed to implement any maintenance program to repair unsafe slip hazards in the industry workplace. Accordingly, the defendant breached its duty of care to its employee, Mr. Gould, and is therefore liable as a matter of law.

**D. The Defendant May Not Disguise an Assumption of the Risk Defense as Contributory Negligence**

It is clear that the FELA bars an assumption of the risk defense:

> In any action brought against any common carrier under or by virtue of any of the provisions of this Act [45 U.S.C. sections 51, et seq.] to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risk of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . .Emphasis added.]
>
> 45 U.S.C. section 54.



KARGIANIS WATKINS, L L P , P S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

It is anticipated that the defendant may claim that the plaintiff violated the "empowerment" rule by failing to inspect the industry track area for defects prior to walking to, in and around the tracks and call that failure, "contributory negligence." In the recent case of Jenkins v. Union Pacific R. Co., 22 F.3d 206 (9th Cir. 1994), the appellate court took up this issue. The court held:

> We continue to adhere to the traditional rule that when an employee carries out his supervisor's general order in an unsafe manner, he is responsible under FELA for his own contributory negligence. But when an employee carries out a direct order, even if he has reason to know the order exposes him to danger, he is not contributorily negligent; rather, his conduct falls under the abolished doctrine of assumption of risk. [Emphasis added.]
> Id. at 211.

In Taylor v. Burlington Railroad Company, 787 F.2d 1309 (9th Cir. 1986), the court distinguished between contributorily negligence and assumption of the risk:

> Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical counterpart of assumption of risk, it does not constitute a defense. [Citations omitted.] By this reasoning, the employer's argument here must fail, for it is in essence an assumption of risk defense, not one based upon contributory negligence. The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or its supervising agents, who by such entry incurs risk not extraordinary in scope, is not contributorily negligent, but rather is engaging in an assumption of risk. [Emphasis added.]

Id. at 1316.

KARGIANIS WATKINS, L L P , P S.
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950

By its nature the empowerment rule – "Employees are empowered and required to discontinue any activity that involves the use of unsafe practices or tools. ." – is an attempt to shift the employer's duty of care upon the worker when the worker has been assigned a task by the employer which is unsafe.

Consequently all allegations of contributory negligence in this case should be stricken.

## V. CONCLUSION

For the reasons stated above, plaintiff respectfully requests the court to enter judgment on the issue of liability against Burlington Northern finding it negligent as a matter of law for this accident. The plaintiff also requests that the court make a finding that the accident was the proximate cause of the plaintiff's injuries. Finally, the plaintiff further requests that the defendant's allegations of contributory negligence be stricken.

Respectfully submitted this 10th day of May, 2001.

By:____________________________
George Kargianis, WSBA #286
Michael T. Watkins, WSBA # 13677
Joanne R. Werner, WSBA #22470
Attorneys for Plaintiff



KARGIANIS WATKINS, L L P , P S
ATTORNEYS AT LAW
2025 FIRST AVENUE, PH/A
SEATTLE, WA 98121-2157
TEL (206) 448-7969 FAX (206) 448-7950